May it please the court. My name is Carter Law. I represent the appellant John Dailey. Mr. Dailey asks this court to remand his case for resentencing because the district court erred in its application of the guidelines and failed to consider the 18 U.S.C. section 3553A sentencing factors. These errors, if left uncorrected, will seriously affect the integrity and fairness and public reputation of judicial proceedings and would thus result in a manifest injustice. Counsel, are you going to address the waiver? I would be happy to judge. It occurred to me that that would likely be your first question. The problem with the government's argument about the waiver judge is that it conflates the courts, this courts and really all of the courts that address the issue of appellate waiver. Consideration of the different components as this court's, I'm sorry, and this opinion refers to the different bases for a finding of manifest injustice. The government, for example, suggests and relies upon cases for the proposition that a within guidelines sentence is unreviewable. The problem with that statement of the proposition of the cases it cites is that those cases concern the manifest injustice which results when a district court imposes an illegal sentence. Mr. Dailey doesn't argue that his sentence was illegal. An illegal sentence, of course, is basically a within guidelines sentence is almost invariably below that maximum and therefore the Andis decision and many other decisions have indicated that a sentence below the maximum is not an illegal sentence and therefore a within guidelines sentence on that issue for the basis of manifest injustice doesn't avoid the appellate waiver. There are three other reasons that courts have because it would result in a manifest injustice. One of them is if the sentence in the district court was based on impermissible reasons such as race. We don't argue that in this case. One is that the negotiation for the appellate waiver was based upon ineffective assistance of counsel. We don't argue that in this case. The fourth basis which is the reason that Mr. Dailey argues that this court should decline to enforce the waiver is that the waiver is otherwise invalid or unlawful specifically because enforcement of the waiver in this case given the unique facts of this case. You're talking about a self-condition. I am, mostly, judge, yes. I think issue four which deals with the overall reasonableness of the sentence discusses a couple of other bases that we offered to the court for a non-guideline sentence but essentially the misapplication of the guidelines is the court's failure to address at all the 5H 1.4 departure. If you read the sentencing transcript you won't see the court say the words departure or 5H 1.4 or the phrase extraordinary physical impairment or the phrase seriously infirm defendant or even denied. The district court simply did not address the request for which is, forgive me, 500 F 3rd 813 8th circuit 2007 specifically sets out the post booker calculation that a sentencing court has to go through and specifically the court must first calculate the advisory guidelines range and then it must decide whether a traditional guidelines departure is appropriate based on parts H or K such as 5H 1.4 and then and only then has the district court actually arrived at a final advisory guideline range at which point it must consider the mandatory 18 USC section 3553A factors which of course include the necessity for a defendant to have medical treatment that can be effectively administered or given in the Bureau of Prisons. There was no evidence presented at the district court at sentencing that the Bureau of Prisons was able to treat Mr. Daly's illness. I told the court in my sentencing memorandum that the drugs that had been projected by the Stanford Cancer Clinic, Mr. Daly had pleaded on July 5th, he went to the Stanford Cancer Clinic on July 27th for his initial evaluation and assessment. He returned to the clinic on November 9th for follow-up assessment. Mr. Daly provided to the court and it's most close to sentencing. The documents that he provided were exhibit A which is in volume 2 of our appendix. I think it starts at 108A. That is the progress note or the note that the Stanford Cancer Clinic doctors provided to Mr. Daly after his initial assessment on July 27th. Three weeks after he pleaded guilty. They, at that time, talked about the fact that his condition was a form of T-cell lymphoma known as mucosis fungoides. At that time in the very first page of that progress note from July 27th, the Stanford Cancer Clinic doctors noted that that particular type of cancer is a chronic illness. Treatment aims therefore at management of the disease, not at cure. At this moment, unfortunately, we don't have a cure. The other problem with this disease is that it is an orphan disease, which is to say maybe 1% of the people in the United States ever contracted. It therefore doesn't receive a lot of R&D dollars for chemotherapy or other types of treatment. Since sentencing, has the record been supplemented with information regarding the defendant's condition? The district court's record has been supplemented continuously, Judge. The district court has compassionately allowed the extension of voluntary surrender date for over a year. Each time we have requested an additional extension of that voluntary surrender for treatment, we have appended exhibits that bring the court up to date upon what treatment has been provided, what treatment is foreseen, what drugs are involved, what procedures are involved. There's no evidence that any of that is available in the Bureau of Prisons, Judge. And there is evidence from his treating physicians that if this treatment is stopped and he no longer receives treatment, it is likely that this disease will be fatal to him. Therefore, a 5H1.4 departure, especially given the specific language in 5H1.4, which says, in the instance of a seriously infirmed defendant who can be treated on home detention in the community as efficiently as he would be in the Bureau of Prisons and at less cost, that's an appropriate time for a 5H1.4 departure. All of Mr. Daley's treatment has been covered by his private insurance, and indeed, the National Lymphoma Society has agreed to pick up any Your Robinson decision has held that an erroneous decision that somebody does not, even if it's implicit, which it would have to be in this case, the court didn't make this explicit determination. But an erroneous determination that someone lacks an extraordinary physical impairment is an erroneous decision that the court lacks the authority to depart. That's the mistake that was made in this court. If uncorrected, it will be a manifest injustice. That gives the court the authority to decline to enforce the appellate waiver, and indeed, if you find a misapplication of the guidelines, 18 U.S.C. 3742F requires you to remand for re-sentence. I see that I'm into my rebuttal time. I'll gladly answer any further questions. Thank you, Ms. Long. Thank you. Ms. McMurtry. May it please the court. I'm Dorothy McMurtry representing the United States. In this appeal, the defendant seeks to reject or have this court not enforce the appeal waiver because of his disagreement and displeasure with the sentence imposed. But this is after he has already received the benefits of that plea, which you were suggesting. Counsel, it seems that the gravamen of this case is the fact that the defendant has already is not an objection to the sentence itself, but to the imposition of it, given his current physical condition. Would you address that argument? I will, Your Honor. The government does not contend that the defendant does not have a serious medical condition, which has manifested itself in rather unpleasant ways. The government's however, is that that condition does not negate the valid waiver that was entered into by the defendant. The illness did not affect the defendant's ability to comprehend and understand the waiver and to voluntarily and knowingly enter into that. The illness also is not a grounds which this court has recognized as a basis for a non-enforcement of that waiver. I recognize that... Have you come across any cases that have recognized a serious medical condition, the imposition of a sentence in light of a serious medical condition as being a miscarriage of justice? I have not found that in this circuit nor any other circuit that have considered that specifically, Your Honor. I have found that there have been instances where courts, even in this court, where the court has held that where there has been a request under 5H1.4 for a downward departure that the court has considered the seriousness of the illness and in some cases has granted a downward departure and in some cases have not. But I have not found cases where the court has chosen to not enforce a waiver on the basis of a serious illness. I would suggest to the court that the grounds which this court to this point have accepted are grounds which the court should continue to use as a basis for not enforcing a waiver. Those grounds specifically have been, if there is an illegal sentence, and defense counsel recognizes that this sentence is not illegal. There has been no misapplication of the guidelines in this case and even were it so, this court in a number of cases which I have cited indicate that a miscarriage, I'm sorry, that a miscalculation of the guidelines simply is not a basis for determining that there is, that the waiver should not be enforced and that that constitutes a miscarriage of justice. I think the cases that Ms. Law relies on is a case specifically out of the First Circuit which uses the rubric of unfairness, whether there is unfairness, fundamental unfairness. And she has suggested, I think implicitly today, but explicitly in her brief, that that should be the standard that this court should use. The government would suggest that that standard should not be the one, that the court should continue with those that it has recognized to date. There are problems with the unfairness standard in the government's view, and that is that it's a very elastic standard. It permits a party, a defendant, to pose to the court that there is this after-sentencing, after-plea condition that would require that the waiver be voided. I would suggest that even if the court were to consider, as Ms. Law suggests, that their unfairness should be the standard by which the court determines whether to enforce the waiver, that in this case the waiver still should be the standard. The law seems to be on your side, but I would like to ask whether your office has ever considered whether it would violate any ethical obligations of your office in an appropriate case to simply concede the appeal and allow the district court to re-sentence. All we have before us is an appellate record, but the district court would have updated facts. Your Honor, the government has not considered conceding because the government does believe that the law is on our side. We believe that the facts are on our side. We believe that the enforcement of this waiver is much more important than its application in this particular case. Waivers are important to the defendants in that they have the opportunity to use that as a means for obtaining concessions from the government. It's important to the government because the government seeks by those waivers to find some finality in the cases that it handles, and also to the court in that we are not faced with having a number of sentences being brought to the attention of the parties have already agreed that there will not be waivers. I'm sorry. I'm sorry. I didn't mean to interrupt, but in the items that have supplemented the record since the filing of the appeal related to the defendant's physical condition, is there information in there that would indicate that the court could reconsider or should reconsider its determination that his illness wasn't serious? There is information in that supplementation, Judge, that would indicate as it was at the sentencing hearing that this is a serious illness. This is a chronic illness which will require continuing treatment. And what does the record show? Will the Bureau of Prisons be able to provide this adequate treatment for him? The record is silent to the extent that there is the assertion by the defendant that the Bureau of Prisons cannot provide the care. At the time that that argument was made at the sentencing, it was based on the fact that there Subsequently, based on the supplementation of the record, those drugs were used. And it's my understanding, and I admit to lack of any real medical knowledge here other than what I read in the record, is that those drugs have been tried and have not been as successful as hoped in treating that condition. Did the district court disregard 5H1.4? And if it did, was it prejudicial to Mr. Daly? Judge, I don't believe that the court disregarded the request for 5H1.4 downward departure. The court listened very attentively as the record reflects and had an interchange with the defendant concerning the condition. So I think that the court was aware of it. It is true that the court, in setting out its reasons for the sentence and its conclusions, did not make specific reference to 5H1.1, but did, in the context of dealing with the other 3553 factors, address the various matters that it had considered. And as the court is aware, the district court need not refer to all of the 3553 matters. But as long as the court has provided for this court's review sufficient evidence so that the court here can determine that there was a reasoned analysis that led to the sentence, that that is sufficient. Does the record show whether the district court was aware of its authority to do a downward departure? The record emphatically shows that the court was aware of its authority to downward depart in the total record. The court at the time of the plea agreement indicated to the defendant that it would consider a basis for departure under the advisory sentencing guidelines. And further, when the court announced its sentence and judgment, it indicated that it was doing so under the advisory sentencing guidelines. So I think that that shows that the court was aware of its authority to downward depart, but exercised its judgment and its discretion in determining that the 3553 factors which it had considered were sufficient and supported the judgment of the sentence that it imposed. I see that my time is up unless the court has additional questions. I see none. Thank you, Ms. McMurray. Thank you. Ms. Law, your rebuttal. Thank you, Judge. Just briefly, appellate waivers have never been intended to provide a safe harbor for sentencing courts to ignore the sentencing guidelines with impunity. In this case, the district court interrupted my argument on Mr. Daly's behalf about the cost of this treatment that he would require. Is this when he said, well, we're not going to address those problems in this sentencing hearing, so if you want to make further arguments. Did I sense, well, I shouldn't even say that. Did the court become impatient with your argument? And maybe that's a human trait, and if so, it may not be error. I sort of had the same sense, Judge, although obviously I don't know. The concern that I have is that the cost, the efficiency and the cost go directly to 5H 1.4's explicit language. That departure guideline says in the case of a seriously infirm defendant who can be as efficiently and less expensively treated in the community, home detention might be a better alternative than prison, and that's exactly what Mr. Daly is asking for. Mr. Daly's never backed away from his plea. He's never necessarily arguing the length of the sentence. It is exactly what you said, Judge. It is the manner in which the sentence is to be executed, which causes him concern. Do the guidelines define seriously infirm? They don't, Judge, although I have to say, given the nature of this condition, all of the doctors who have treated it have said it can be managed if it's treated. If it's not treated, the lesions proliferate. There was a period of about three weeks last spring when the doctors tried to give Mr. Daly a break from one of the chemo drugs they tried to let him get back on his feet and then started at a lower dose, and the lesions literally just exploded. Has all of this been made known to the district court? Is the district court aware of all of the facts that you are presenting to us today? Yes, sir, Judge. The district court has a very, I think at this point, an extremely replete record, and therefore I think to remand for resentencing would likely be, as the Supreme Court has recently referred to it in the United States against Rosales Mireles, which is number 16-9493, just decided on June 18th in the context of the Olano test, which is the undue unfairness. Plain error. Yes, sir. With respect to that, in rejecting the Fifth Circuit's attempt to overlay a shocks the conscience factor to the Olano test, the Supreme Court specifically said remand for resentencing is a relatively inexpensive proceeding compared to remand for consent. It shouldn't cause any undue inconvenience. The government didn't call witnesses or indicate that it wanted to call witnesses. We didn't call witnesses, and our argument in front of the district court on resentencing would be extremely specific. District court is well aware of all of the issues, which I think could very well have informed its compassionate agreement to allow him to continue to have his treatment. I don't know that either. The court's not said that, but certainly the court is very well aware of the serious nature of this disease and the need for continued care, which just isn't going to happen if he goes to the Bureau of Prisons. And would there be any limits on the district court's authority to change the sentence or reduce the sentence? Not that I'm aware of, Judge. If this court finds that he misapplied the guidelines and remands for further sentencing proceedings, there's nothing that I'm aware of that says the district court can't simply amend its sentence, given the record that has been allowed to accumulate now, and make, instead of 27 months in the Bureau of Prisons, for example, 27 months of home confinement. That simple change could make the difference in this man's life, quite honestly. And how do you respond then to the government's argument that, from the government's standpoint, it's very important to the government to enforce these waivers that are freely entered into? Well, I guess the thrust of your argument is, given the unique factual situation, whatever the general rule is, it doesn't apply to this case. I think that's true, Judge. Well, exactly. And I think conversely, I don't see that this is going to be a precedential situation simply because of the rarity of the disease. In all the years I've been in this practice, I've never, frankly, heard of it before. And again, it's an orphan disease, which is the problem with not only the treatment, the targretin, the oral chemotherapy, the chemotherapy that he takes, 240 capsules a month. A hundred capsules of targretin costs $26,000. I mean, it's just the expense of the treatment is just off the charts, and it is completely covered by private insurance and the National Lymphoma Society, which in and of itself, I think, says something about this condition. Thank you, Ms. Law. Thank you very much for your attention and questions. Court, thanks both counsel for your argument to the court this morning and the briefing you have provided us. We will take the case under advisement. You may be excused.